**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**
Alexandria Division

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| **KAREN J. DEMATTEO**, | * | **Case No. 20-12626-BFK** |
| | * | Chapter 7 |
| Debtor. | * | |

**TRUSTEE'S MOTION TO COMPEL TURNOVER OF CRYPTOCURRENCY ASSETS, AN ACCOUNTING, AND TURNOVER OF RECORDED INFORMATION RELATED TO THE CRYPTOCURRENCY ASSETS**

DONALD F. KING, CHAPTER 7 TRUSTEE ("**Trustee**"), by counsel, seeks entry of an order compelling the Debtor to turnover Cryptocurrency Assets, to provide an accounting, and to turnover to the Trustee all recorded information related to the Cryptocurrency Assets. In support of this motion (the "**Motion**"), the Trustee states as follows:

1. On December 2, 2020 ("**Petition Date**"), Karen J. DeMatteo ("**Debtor**") filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code ("**Bankruptcy Code**"), commencing bankruptcy case number 20-12626-BFK ("**Bankruptcy Case**") in the United States Bankruptcy Court for the Eastern District of Virginia ("**Court**").

2. Donald F. King ("**Trustee**") is the duly appointed Chapter 7 Trustee of the Debtor's bankruptcy estate (the "**Bankruptcy Estate**").

3. On December 4, 2020 this Court issued a standard order setting forth requirements for the Debtor in this Bankruptcy Case (the "**Order to Debtor**"). Dkt. No. 6. The Order to Debtor required Ms. DeMatteo to "safely care for, protect and preserve all of [her] property," prohibited her from taking actions to "sell, refinance, transfer, remove, destroy, mutilate or conceal any of [her] property;" requiring her to "make all or any part [of her

---

**BRADLEY D. JONES (VSB No. 85095)**
Counsel for Trustee
**ODIN FELDMAN & PITTLEMAN PC**
1775 Wiehle Avenue, Suite 400
Reston, Virginia 20190
Phone: 703-218-2176
Fax: 703-218-2160
Email: Brad.Jones@ofplaw.com

property] available to the trustee, when requested to do so," and instructing her to "preserve all recorded information, including books, documents, records and papers, from which [her] financial condition or business transactions might be ascertained" and to "cooperate with the Trustee as is necessary to enable the Trustee to perform the Trustee's duties as required by law." Dkt. No. 6 at 1, ¶¶2–6.

4. Because the Debtor was alleged to own cryptocurrency through the Coinbase cryptocurrency exchange ("**Coinbase**"), the Trustee filed a motion to conduct a 2004 examination of Coinbase, which this Court granted. *See* Dkt. Nos. 61, 69.

5. In response to a subpoena issued by the Trustee, Coinbase produced statements for three cryptocurrency accounts associated with the Debtor, Karen DeMatteo. Copies of these account statements are attached as **Exhibit A**.

6. The production from Coinbase confirmed that the Debtor held cryptocurrency as of the Petition Date in accounts maintained with Coinbase. The Debtor owned or controlled one or more of these accounts both prior to and through the filing of her Bankruptcy Case. Each account was associated with a different email address. Those email addresses were:

- dematteokaren@gmail.com (opened on or about Sept. 26, 2017)
- boomersforcrypto@gmail.com (opened on or about April 10, 2021)
- karenjdematteo@gmail.com (opened on or about June 23, 2021)

[Exhibit A at 1].

7. A review of the statements provided by Coinbase show that as of the Petition Date the Debtor held cryptocurrency assets[1] with significant market value (the "**Cryptocurrency**

---

[1] Cryptocurrency is a form of currency represented by "tokens" or "coins" that exist digitally and use blockchain protocols—specific sets of rules drafted in computer programming code—to facilitate transactions. Each transaction constitutes a "block." A "blockchain" is a ledger validating and settling these transactions that is distributed among computers across the world. The blockchain has no central intermediary and is replicated on each computer that runs the software relating to the blockchain. This allows maintenance of the blockchain to be decentralized or distributed. Darren J. Sandler, CITRUS GROVES IN THE CLOUD: IS CRYPTOCURRENCY CLOUD

**Assets**"). As of the petition date, the Debtor owned approximately fifty different cryptocurrencies, each organized in a separate wallet on the Coinbase exchange. *See* [Exhibit A at 3].

8. However, once the Debtor realized that the Trustee would seek to administer her cryptocurrency, she began transferring or hiding those assets.

9. A continued Meeting of Creditors was held on January 5, 2021. The Debtor was questioned under oath at that meeting about whether she owned cryptocurrency or had a Coinbase account. However, the Debtor falsely testified that she did not personally hold cryptocurrency directly or through an account. She also testified that none of her LLCs to her knowledge ever had any cryptocurrency.

10. However, later in her January 5 testimony, the Debtor was specifically asked about whether an entity she owned named Mount Atlas Lane, LLC had a Coinbase account. When questioning indicated that a Coinbase account shows up in the bank statements for 3808 Mount Atlas Lane, LLC, the Debtor's testimony changed and she admitted to having a Coinbase account during the time frame of 2018 through present. Ms. DeMatteo was then instructed by the Trustee that if she "had a Coinbase account at the time the petition was filed, that account now belongs to me."

11. Nonetheless, after the January 5, 2021 continued meeting of creditors, the Coinbase account statements show the Debtor immediately began transferring or liquidating her Cryptocurrency Assets. Beginning on January 7, 2021—two days after her testimony at the continued meeting of creditors—the Debtor began making a series of 17 cryptocurrency transactions from her Coinbase account as follows:

---

MINING A SECURITY?, 34 Santa Clara High Tech. L.J. 250, 254 (2018); *see also* Jack G. Haake, "The Bankruptcy Estate And Cryptocurrency," 2018 WL 2121762 (May 9, 2018).

| Date | Account | Transaction | Amount | Market Value ($USD) |
|---|---|---|---|---|
| 1/8/2021 | UNI Wallet | You sent Uniswap to 0x2b177af747460B0F17538746D1c93a5A09fEb6ad | -480.3073544 | -$2,992.92 |
| 1/8/2021 | DASH Wallet | You sent Dash to XeFag1BGfqGLvUiBU6rSLWYUfyy8m3ugxB | -38.09762755 | -$3,763.53 |
| 1/8/2021 | ETC Wallet | You sent Ethereum Classic to 0xDeB1A92Cb8197061527d414FC44a79B500Fb114D | -70.36349346 | -$500.92 |
| 1/8/2021 | XLM Wallet | You sent Stellar Lumens to B6YPGW5JFMMP2QB2USQ33EUWTXVL4ZT5ITUNCY3YKVWOJPP57CANOF3 (3025185c5aad446f8ef) | -645.4486191 | -$200.96 |
| 1/8/2021 | MKR Wallet | You sent Maker to 0x2b177af747460B0F17538746D1c93a5A09fEb6ad | -0.4505749 | -$504.61 |
| 1/8/2021 | UNI Wallet | You sent Uniswap to 0x2b177af747460B0F17538746D1c93a5A09fEb6ad | -160.9554257 | -$997.46 |
| 1/8/2021 | DASH Wallet | You sent Dash to XeFag1BGfqGLvUiBU6rSLWYUfyy8m3ugxB | -10.11715893 | -$1,000.63 |
| 1/8/2021 | ZRX Wallet | You sent 0x to 0x2b177af747460B0F17538746D1c93a5A09fEb6ad | -14,710.58 | -$6,669.96 |
| 1/8/2021 | ETH Wallet | You sent Ethereum to 0x2b177af747460B0F17538746D1c93a5A09fEb6ad | -8.53214728 | -$10,664.97 |
| 1/8/2021 | BTC Wallet | You sent Bitcoin to 1dPupYP2pvPjgzQY95m8HeDqjSygXMixm | -2.52191539 | -$103,467.38 |
| 1/8/2021 | LINK Wallet | You sent Chainlink to 0x2b177af747460B0F17538746D1c93a5A09fEb6ad | -1,263.94 | -$19,896.64 |
| 1/8/2021 | ETH Wallet | You sent Ethereum to 0x2b177af747460B0F17538746D1c93a5A09fEb6ad | -40.04795823 | -$50,058.95 |

| Date | Account | Transaction | Amount | Market Value ($USD) |
|---|---|---|---|---|
| 1/8/2021 | BTC Wallet | You sent Bitcoin to 1dPupYP2pvPjgzQY95m8HeDqjSygXMixm | -1.83472466 | -$75,273.80 |
| 1/7/2021 | LINK Wallet | You sent Chainlink to 0x2b177af747460B0F17538746D1c93a5A09fEb6ad | -59.99155376 | -$1,003.73 |
| 1/7/2021 | ETH Wallet | You sent Ethereum to 0x2b177af747460B0F17538746D1c93a5A09fEb6ad | -1.64056292 | -$2,009.14 |
| 1/7/2021 | BTC Wallet | You sent Bitcoin to 1dPupYP2pvPjgzQY95m8HeDqjSygXMixm | -1.96093496 | -$75,208.88 |
| 1/7/2021 | BTC Wallet | You sent Bitcoin to 1dPupYP2pvPjgzQY95m8HeDqjSygXMixm | -0.00262495 | -$101.03 |
| | | | Total | -$354,315.51 |

[Exhibit A, Pages 8–9].

12.     These transactions involved cryptocurrencies with a total market value, at the time of the transactions, in excess of $354,000.00.

13.     The statements received by Coinbase indicate that cryptocurrency was transferred off the Coinbase platform and sent via a series of private or public address keys[2] to addresses or accounts not associated with Coinbase. The owner or owners of these public keys are unknown.

14.     The Trustee believes the Debtor either still owns or controls this cryptocurrency or its proceeds—either directly or through one or more entities that she controls—or has knowledge of the person or persons in possession or control of these assets.

---

[2] These address keys are shown in the "Transaction" column of the above chart. A digital currency address "is an alphanumeric identifier that represents a potential destination for a digital currency transfer. A digital currency address is associated with a digital currency wallet." *See* U.S. Department of the Treasury, "Questions on Virtual Currency," https://home.treasury.gov/policy-issues/financial-sanctions/faqs/topic/1626 (last accessed March 1, 2022). "A digital currency wallet is a software application (or other mechanism) that provides a means for holding, storing, and transferring digital currency. A wallet holds the user's digital currency addresses, which allow the user to receive digital currency, and private keys, which allow the user to transfer digital currency." *Id.*

**RELIEF REQUESTED**

1. <u>The Court Should Enter an Order Requiring the Debtor to Deliver All Cryptocurrency Assets Belonging to the Bankruptcy Estate to the Trustee</u>.

A sale of the Cryptocurrency Assets will provide a meaningful distribution to creditors of this Bankruptcy Estate. Pursuant to 11 U.S.C. § 542(a), this Court can compel any entity (other than a custodian) who is in possession, custody or control of any property that the Trustee may use, sell, or lease to deliver that property to the Trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate. Turnover actions under § 542 are "essential to the process of assembling a debtor's estate as defined by § 541 of the Bankruptcy Code" and serve the fundamental purpose of collecting and distributing estate assets among creditors. *In re Patriot Coal Corp.*, 562 B.R. 632, 641 (Bankr. E.D. Va. 2016) (citations omitted).

Here, the Cryptocurrency Assets are property that the Trustee can sell pursuant to 11 U.S.C. § 363 of the Bankruptcy Code. The Cryptocurrency Assets held by the Debtor as of the Petition Date are property of the Bankruptcy Estate pursuant to 11 U.S.C. § 541(a)(1). The market value of the assets at the time the Debtor transferred them from her Coinbase accounts was in excess of $354,000.00. As a result, the property is not of inconsequential value or benefit to the Bankruptcy Estate. Pursuant to 11 U.S.C. § 542(a), this Court should enter an order requiring the Debtor to deliver to the Trustee all cryptocurrency or the proceeds of all cryptocurrency owned or controlled by the Debtor as of the Petition Date.

As part of this turnover order, the Court should also require the Debtor to deliver any and all property incident to the ownership or control of the Cryptocurrency Assets, including the digital currency wallets; username and password information for all digital currency wallet applications; username and password information for all accounts holding Cryptocurrency Assets

or proceeds (including login information for the Debtor's accounts on any cryptocurrency exchanges); any and all storage devices holding the cryptocurrency or related software applications, including digital currency wallets; all public or private digital currency addresses owned or controlled by the Debtor (including QR codes for those addresses); and any and all tax or financial records associated with the Cryptocurrency Assets, including any 1099-Misc. or other tax documents issued by any of the exchanges on which the Debtor purchased or traded cryptocurrency. These items are also assets of the Bankruptcy Estate, entitled to turnover under 11 U.S.C. § 542(a) and are necessary to facilitate the Trustee's recovery and administration of the Cryptocurrency Assets.

2. <u>The Court Should Require the Debtor to Account of for the Disposition of all Cryptocurrency Assets Since the Petition Date</u>.

As a person with possession, custody or control of the cryptocurrency asset since the Petition Date, pursuant to 11 U.S.C. § 542(a) the Debtor is also required to account for the disposition of the Cryptocurrency Assets. "When a claim for turnover is adequately pled, an accounting may also be merited." *In re Whittick*, 547 B.R. 628, 642–43 (Bankr. D.N.J. 2016) (citing *In re Trinity Innovative Enterprises, LLC*, 2010 WL 5462495, at *6 (Bankr. E.D. Pa. Dec. 27, 2010); *Am. Home Mortg. Holding v. Showcase of Agents, LLC (In re Am. Home Mortgage Holding)*, 458 B.R. 161, 171 (Bankr. D. Del. 2011)). An accounting requires the Debtor to explain and identify all transfers and uses of the Cryptocurrency Assets to allow the Trustee to understand the transactions and pursue recovery of any avoidable transfers. *Whittick*, 547 B.R. at 642–43.

Requiring an accounting is particularly appropriate here. Cryptocurrency transactions present significant difficulties in tracing financial assets through traditional means. Cryptocurrency can be held locally by a person on their desktop computer or storage device as

well as virtually in wallets held by other parties, such as an exchange, which may or may not be hosted in the United States. *See Neal B. Christiansen & Julia E. Jarrett*, Forfeiting Cryptocurrency: Decrypting the Challenges of a Modern Asset, 67 DOJ J. Fed. L. & Prac. 155, 175–77 (2019). There is a sizeable amount of funds at issue and the Debtor appears to own a number of LLC and other business interests that may be involved in receiving or transferring the Cryptocurrency Assets.

The Debtor may be the only person who is able to know where these assets are located and/or who they were transferred. Without the ability to require the Debtor to provide detailed information about her transactions, subject to this Court's contempt power, there may be no way for the Bankruptcy Estate to recover these assets or understand the transactions related to the Cryptocurrency Assets.[3]

3. <u>The Court Should Require the Debtor to Turnover to the Trustee all Books and Records in Her Possession Related to the Cryptocurrency Assets.</u>

In addition, the Trustee is also entitled to receive copies of all nonprivileged "recorded information, including books, documents, records, and papers," related to the Cryptocurrency Assets pursuant to 11 U.S.C. § 542(e). Requiring the Debtor to provide all records in her possession related to these assets will facilitate the recovery of the Cryptocurrency Assets so they may be administered for the benefit of creditors. These records include all account records, ledgers, transaction receipts, tax statements, username and password information, virtual wallet and digital address information, and all other "books, documents, records, and papers" related to the Cryptocurrency Assets.

This information is also necessary to ensure that the accounting provided by the Debtor is accurate and complete. In addition, some of the recorded information, including username and

---

[3] The Debtor has already waived her bankruptcy discharge. *See* Dkt. Nos. 55–57.

passwords to accounts or exchanges holding cryptocurrency, the public and private keys used by the Debtor, and the password and access to the wallets holding the Cryptocurrency Assets are the only means to enable the Trustee to gain control of the Bankruptcy Estate's cryptocurrency or allow the Trustee to administer these assets.

WHEREFORE, Donald F. King, Trustee, respectfully requests that the Court enter an order: (1) requiring the Debtor to deliver all Cryptocurrency Assets to the Trustee within 14 days of the entry of an order by this Court; (2) requiring the Debtor to provide an accounting for the Cryptocurrency Assets, including detailing the date, time, amount, and purpose of any transfer of Cryptocurrency Assets to any person as well as to describe the identity of any person in control of the Cryptocurrency Assets with the account or wallet information for that account; (3) requiring the Debtor to provide the Trustee all records in her possession related to the Cryptocurrency Assets; and (4) providing such other and further relief as the Court may determine to be appropriate.

Respectfully submitted,

**DONALD F. KING, TRUSTEE**
By counsel

**By:**        /s/ *Bradley D. Jones*
**Bradley D. Jones (VSB No. 85095)**
**Counsel for Trustee**
**ODIN, FELDMAN & PITTLEMAN, P.C.**
**1775 Wiehle Avenue, Suite 400**
**Reston, Virginia 20190**
**Direct:   703-218-2176**
**Fax:      703-218-2160**
**Email:   Brad.Jones@ofplaw.com**

#5185736v1  031070/002844