UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re:                                         )
                                               )
KAREN J. DEMATTEO,                             )      Case No. 20-12626-BFK
                                               )      Chapter 7
            Debtor.                            )
_____)

**MEMORANDUM OPINION AND
ORDER DENYING DEBTOR'S MOTION
TO VACATE ORDER WAIVING DISCHARGE**

This matter comes before the Court on the Debtor's Motion to Vacate the Order approving a waiver of her discharge. (Docket No. 122). The U.S. Trustee ("UST") filed an Opposition to the Debtor's Motion. (Docket No. 131). Clear Sky Financial, LLC ("Clear Sky"), a creditor, filed a Joinder in the U.S. Trustee's Opposition. (Docket No. 135). The Court heard the evidence and the parties' arguments on September 20 and 21, 2022. For the reasons stated below, the Court will deny the Debtor's Motion.

**Findings of Fact**

The Court, having heard the evidence, makes the following findings of fact.

*A.  Clear Sky's Lawsuit Against the Debtor.*

1. The Debtor is an individual residing in Haymarket, Virginia. She has been involved in buying, rehabilitating and selling (in ordinary terms, "flipping") houses since 2008. She regularly reviews and signs contracts for the purchase, sale and financing of real estate as a part of her business.

2. In 2012, the Debtor started using Tae Jang as a contractor on a number of her projects. In 2019, Mr. Jang and the Debtor began to share equity in the limited liability companies that owned the properties.

1

3. At some point in 2020, Clear Sky confessed judgment against the Debtor in the Circuit Court of Fairfax County on one of the obligations she owed to Clear Sky.

4. The Debtor engaged James Bacon, an attorney in Fairfax County, to represent her. Mr. Bacon was successful in having the Confessed Judgment set aside. DR Ex. 10.[1]

5. The case then proceeded as a breach of contract lawsuit in the Circuit Court, until the Debtor filed a Voluntary Petition with this Court, as described below.

6. While the Fairfax case was pending, the Debtor engaged Stephen Sheehy, also an attorney in Fairfax. She wanted Mr. Sheehy to apply for a restraining order against Clear Sky, which she maintained was improperly continuing to execute on the Confessed Judgment (Clear Sky denies the allegation). Eventually, the Debtor's discussions with Mr. Sheehy turned toward a bankruptcy filing as a viable alternative to defending Clear Sky's lawsuit.

B. *The Debtor's Bankruptcy Case.*

7. The Debtor filed a Voluntary Petition under Chapter 7 with this Court on December 2, 2020. (Docket No. 1).

8. She was represented by Mr. Sheehy, who was admitted to practice in this Court. *Id*.

9. This was not the Debtor's first bankruptcy case. She filed for Chapter 7 bankruptcy in April 2011, and received a discharge. Case No. 11-12960-RGM.

10. Further, she filed a Chapter 11 case on behalf of 14543 Stephen Street, LLC, of which she was the owner, in August 2020. Case No. 20-11809-BFK. The case was later dismissed.

---

[1] Clear Sky's Exhibits will be referred to as "CS Ex. __." The U.S. Trustee's Exhibits will be referred to as "UST Ex. __." The Debtor's Exhibits will be referred to as "DR Ex. __."

11. In her Schedules the Debtor listed one bank account, a checking account with PNC Bank in the amount of $512.00. Schedule A/B at 11, Docket No. 1. She did not list any cryptocurrency accounts. *Id*.

12. The Chapter 7 Trustee, Donald F. King, conducted the first meeting of creditors on December 30, 2020. CS Ex. K.

13. The Debtor testified as follows:

MR. KING: Did you list all your debts and your assets?

MS. DEMATTEO: Yes, I did.

\*         \*         \*

MR. KING: Have you owned any cryptocurrency in the past two years?

MS. DEMATTEO: No.

*Id*. at 5—7.

14. The Trustee conducted a continued meeting of creditors on January 5, 2021. CS Ex. J.

15. The Debtor testified as follows:

MR. GRASS [COUNSEL FOR CLEAR SKY}: Have you personally ever had any cryptocurrency directly or through an account?

MS. DEMATTEO: Not that I know of.

MR. GRASS: And have any of your LLC's to your knowledge ever had any cryptocurrency?

MS. DEMATTEO: No, not that I know of.

\*         \*         \*

MR. GRASS: Okay. Are you familiar with something called Coinbase, C-O-I-N-B-A-S-E or Coinbase.com?

MS. DEMATTEO: No.

3

>MR. GRASS: Are you – if I say if you knew that Coinbase is an online – excuse me – resource that you can use to hold cryptocurrency, does that make sense to you? Have you heard of such a thing?
>
>MS. DEMATTEO: You know, I mean, I've heard a little bit.
>
>MR. GRASS: So, but you don't – you don't have a Coinbase account or any login information for a Coinbase account?
>
>MS. DEMATTEO: No.

*Id.* at 17—18.

16. The Debtor then requested Mr. Sheehy to "withdraw" her bankruptcy filing.[2]

17. Mr. Sheehy prepared a Motion to Dismiss With Prejudice and a Motion to Withdraw as the Debtors' counsel, both dated February 4, 2021, but he never filed either pleading with the Court. DR Exs. 3, 4.

18. The Debtor filed Amended Schedules on March 8, 2021. (Docket No. 28). In her Amended Schedule A/B, she listed: (a) the same PNC Bank account that she originally disclosed ($512.00); (b) an Investment Account with Charles Schwab ($19,283.00); (c) a TD Ameritrade account ($1,630.00); and (d) a Roth IRA with The Kingdom Trust Company in the amount of $29,380.00. *Id*. at 3. She did not list any other cryptocurrency accounts.[3]

19. On June 28, 2021, Mr. Sheehy filed a Motion to Covert the case to one under Chapter 11. (Docket No. 38). The Trustee objected to the Motion, and Mr. Sheehy withdrew the Motion on July 21, 2021. (Docket Nos. 44, 47).

C. *The Two Adversary Proceedings.*

---

[2] Debtors in Chapter 7 do not have the right to unilaterally withdraw their petitions. Rather, a Chapter 7 case may be dismissed by the Court after notice and a hearing and "only for cause." 11 U.S.C. § 707(a).

[3] The Debtor denies that she signed the Amended Schedules. She also testified that she understood that any funds in her retirement account would be "protected." This is an accurate statement of the law. 11 U.S.C. § 541(c)(2); *Patterson v. Shumate*, 504 U.S. 753 (1992). The proper thing to do, however, is to list retirement accounts on Schedule B and to exempt them on Schedule C, which was not done in this case.

20. On June 30, 2021, Clear Sky filed an Adversary Complaint against the Debtor, seeking to deny her a discharge under Bankruptcy Code Section 727(a). Adv. Pro. No. 21-1040-BFK.

21. On July 28, 2021, Mr. Sheehy filed a Motion to Dismiss Clear Sky's Complaint. *Id*. at Docket No. 5.

22. Also on June 30, 2021, the UST filed a Complaint to deny the Debtor a discharge under Section 727 of the Code. Adv. Pro. No. 21-01039-BFK.

23. In his Complaint, the UST alleged that the Debtor failed to disclose ownership of certain Digital Assets, including Bitcoin, Bitcoin Case, Ethereum, Ethereum Classic, Litecoin, and Ripple. *Id*. Docket No. 1 at 13.

24. On August 2, 2021, Mr. Sheehy filed an Answer to the UST's Complaint on behalf of the Debtor. *Id*. at Docket No. 5.

D. *The Debtor Waives her Discharge.*

25. At about the time that the adversary proceedings were filed, either Clear Sky or the UST suggested a waiver of the Debtor's discharge as a way to resolve the adversary proceedings. Mr. Sheehy forward a proposed Waiver of Discharge ("the Waiver") to the Debtor on August 3, 2021. CS Ex. O, at 2—3.

26. On the same day, August 3, 2021, the Debtor sought advice from both Mr. Sheehy and Mr. Bacon on whether to sign the proposed Waiver. CS Ex. O at 2 ("What are the consequences of the waiver?").

27. Mr. Sheehy responded to the Debtor's inquiry on August 4, 2021. In his e-mail to the Debtor, Mr. Sheehy advised the Debtor with respect to her options. He noted that she could

continue to defend the cases, but that he would have to withdraw if she chose to do so. He further recommended that she engage independent counsel to advise her on her options. *Id*. at 1—2.

28. The Debtor forwarded Mr. Sheehy's e-mail to Mr. Bacon for his advice. *Id*. at 3.

29. The Debtor and Mr. Jang met with Mr. Sheehy, another attorney, John Forest, and a third unnamed attorney, in Mr. Sheehy's offices. Mr. Bacon, who was walking by the conference room, also stepped in for a few minutes.

30. The Debtor claims that she was "threatened" by the attorneys, and browbeaten into signing the Waiver (she did not accuse Mr. Bacon of any threatening behavior). She testified that the attorneys told her that she needed to sign the Waiver or she could go to jail.

31. Mr. Bacon advised the Debtor that if she did not sign the Waiver, he could not represent Mr. Jang in a related lawsuit filed by Clear Sky because Mr. Bacon perceived the potential for a conflict between the two parties.

32. The Debtor did not sign the Waiver at that meeting. Rather, she took the unsigned Waiver with her when she left the meeting.

33. The Debtor requested a brief meeting with Mr. Bacon outside of his offices (Mr. Sheehy was subletting space from Mr. Bacon's firm, and they used the same conference room).

34. The Debtor, Mr. Jang, and Mr. Bacon met briefly at a restaurant in Fairfax. At the meeting, Mr. Bacon reiterated that he could not represent Mr. Jang unless the Debtor signed the Waiver. Mr. Bacon confirmed this in an e-mail to the Debtor on August 9, 2021. CS Ex. P at 11 ("You asked me for advice, I gave it to you, and you decided not to take it.").

35. On August 10, the Debtor signed the Waiver. (Doc. Nos. 55, 56) (Docket No. 55 is signed by the Debtor alone; Docket No. 56 is signed by both the Debtor and her counsel).

36. The Waiver provides as follows:

6

    (1) I am the Debtor in the above-named bankruptcy case.
    (2) I am represented by attorney Stephen J. Sheehy, III.
    (3) On December 2, 2020, I filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code.
    (4) I **waive** my discharge in bankruptcy.
    (5) I have discussed the consequences of my waiver of discharge with my attorney.
    (6) I understand that none of my debts and obligations will be discharged in this case and that I will NOT receive a discharge of my debts and obligations in this case.
    (7) I waive my discharge freely and voluntarily.
    (8) I ask that the Court approve this waiver of discharge pursuant to Section 727(a)(10) of the Bankruptcy Code.

(Docket No. 56).

37.    The Court approved the Waiver on August 16, 2021. (Docket No. 57.) The Order Approving Waiver of Discharge was endorsed by the UST and by counsel for Mr. Sheehy as counsel for the Debtor. (Docket No. 57).[4]

38.    The Court later dismissed the two adversary proceedings objecting to the Debtor's discharge as moot. Adv. Pro. No. 21-01039-BFK, Docket No. 8; Adv. Pro. No. 21-01040-BFK, Docket No. 11.

    E.  *The Trustee's Settlement With the Debtor.*

39.    On August 24, 2021, the Trustee filed Motions for Rule 2004 Examinations of Coinbase, Kingdom Trust, and PNC Bank. (Docket Nos. 62—66).

40.    Unfortunately, Mr. Sheehy passed away shortly thereafter.

41.    On March 8, 2022, the Trustee filed a Motion for Turnover of Cryptocurrency Assets and a Motion to Sell the Cryptocurrency. (Docket Nos. 97, 99).

42.    The Debtor, now acting *pro se*, requested a continuance of the Trustee's Motions owing to Mr. Sheehy's passing, which the Court granted. (Docket Nos. 102—103).

---

[4] There is no suggestion from the Debtor that the Waiver did not comply with the requirements of Bankruptcy Code Section 727(a)(10). It was in writing, executed after the commencement of the case, and was approved by the Court.

43. The Court held an initial hearing on the Trustee's Motions on April 15, 2022. At the hearing the Court questioned whether all of the cryptocurrency assets were property of the bankruptcy estate, or whether some of the cryptocurrency may have been acquired by the Debtor post-petition, from post-petition earnings or borrowings (the Debtor advised the Court that she purchased some of the cryptocurrency using her VISA card, after the bankruptcy was filed). (Docket No. 114).

44. The Court set the Trustee's Motions for an evidentiary hearing on June 2, 2022. (Docket No. 112.)

45. On June 7, 2022, the Trustee filed a Motion for Approval of a Settlement with the Debtor concerning the cryptocurrency assets under Bankruptcy Rule 9019. (Docket No. 119).

46. Under the settlement, the Trustee would liquidate the cryptocurrency and would retain $200,000.00. The Debtor would be entitled to retain: (a) 4.5998 of Ethereum (ETH) cryptocurrency held in the MetaMask wallet, which the Trustee estimated had a market value of approximately $14,197.18; (2) the cryptocurrency in the Debtor's Kingdom Trust IRA account (which was listed by the Debtor in her Amended Schedules as having a value of $29,380.00); and (3) the cryptocurrency held in the two Coinbase accounts that were opened post-petition (value unknown). *Id.* at 3—5.

47. The Court approved the Settlement on June 29, 2022. (Docket No. 126).

F. *The Debtor's Motion to Vacate.*

48. On June 28, 2022, the Debtor filed a Letter with the Court. (Docket No. 122). The Letter, in effect, requested that the Court grant her a discharge. *Id.* at 3.

49. The Court construed the Debtor's letter as a Motion to Vacate the Order approving the waiver of her discharge, and set the matter for an evidentiary hearing. (Docket No. 127).

**Conclusions of Law**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Order of Reference entered by the U.S. District Court for this District on August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate). This is a contested matter under Bankruptcy Rule 9014.

Bankruptcy Rule 9024 incorporates Federal Rule of Civil Procedure 60, including Rule 60(b) (Grounds for Relief from a Final Judgment, Order or Proceeding). Bankr. R. 9024. A Rule 60(b) Motion is "not authorized when it is nothing more than a request for the district court to change its mind." *Myers v. Simpson*, 831 F.Supp.2d 945, 956 (E.D. Va. 2012) (citing *Lee X v. Casey*, 771 F.Supp. 725, 728 (E.D. Va. 1991)). A motion for reconsideration is not an opportunity for a litigant "to present a better and more compelling argument than was originally presented." *In re Greene*, No. 10–51071, 2013 WL 1724924, at 2 (Bankr. E.D. Va. 2013) (quoting *Madison River Mgmt. Co. v. Bus. Mgmt. Software Corp.,* 402 F.Supp.2d 617, 619 (M.D. N.C. 2005)). The Court will review the Debtor's Motion under each subsection of Rule 60(b).[5]

A.  *Rule 60(b)(1).*

Under Rule 60(b)(1) a final order can be vacated for mistake, inadvertence, surprise, or excusable neglect. Fed. R. Civ. P. 60(b)(1). The Court finds that the Debtor has not demonstrated any of these grounds for relief.

---

[5] If the Order Approving Waiver of Discharge is considered to be a non-final Order, the Court still would deny the Debtor's Motion under the standards for a motion to reconsider in the Fourth Circuit. There has been no newly discovered evidence presented. There is no intervening case law supportive of the Debtor's position. Further, the Court did not commit a manifest injustice in approving the Waiver at the Debtor's request. *See Braunstein v. Pickens*, 406 Fed. Appx. 791, 798 (4th Cir. 2011) (quoting *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (stating that, under Rule 59(e), courts have recognized "three grounds for amending a judgment: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice.")). Reconsideration of a judgment is "an extraordinary remedy which should be used sparingly." *In re Mitrano*, 409 B.R. 812, 820 (E.D. Va. 2009) (quoting *Pac. Ins. Co.*, 148 F.3d at 403).

The Debtor argues that the Waiver was the product of duress or coercion, and that she felt "threatened" by the attorneys. Duress can be found when a party commits a wrongful act sufficient to prevent another party from exercising their free will, thereby coercing the party's consent. *Goode v. Burke Town Plaza, Inc.,* 436 S.E.2d 450 (Va. 1993) (referencing 13 Samuel Wilson, A Treatise On The Law Of Contracts § 1603, 663 (3d. ed. 1970)). Importantly, the Debtor did not sign the Waiver at the meeting in which she claims to have been pressured to sign. Rather, she refused to sign it at that meeting, she took it with her, and she signed it a few days later after she had the opportunity to think about it. *See Negri v. Northwestern Mut. Life Ins. Co.*, 165 Fed. Appx. 247, 249 (4th Cir. 2006) (considering whether to sign a document for three days before signing the document likely does not constitute duress). The Court finds that the Debtor's evidence fails to establish duress or coercion in her execution of the Waiver.

The Debtor further argues that she received bad advice from her attorneys. Whether or not bad advice constitutes grounds for relief under Rule 60(b) is debatable. *See In re Babcock*, 258 B.R. 648 (Bankr. E.D. Va. 2001) (deciding that even "gross incompetence" on the part of counsel did not justify debtor's conduct that resulted in a revocation of discharge). In *Pioneer Inv. Serv. Co. v. Brunswick Assoc., L.P.,* the Supreme Court held: "clients must be held accountable for the acts and omissions of their attorneys." 507 U.S. 380, 396 (1993). The Court quoted *Link v. Wabash R. Co.*, which held:

> "Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'"

370 U.S. 626, 633—34 (1962).

Assuming that bad legal advice could provide the Debtor with a ground for relief, in this case the advice was not objectively unreasonable or wrong. It was entirely reasonable for the attorneys to advise the Debtor, in effect, that the allegations against her were substantially justified, and that it was simply not worth her time, effort and money to defend the two adversary proceedings. Mr. Sheehy's e-mail of August 4, 2021, which he sent a week before the Debtor executed the Waiver, correctly laid out the Debtor's options, and even recommended that she engage independent counsel to advise her on whether or not to sign the Waiver. CS Ex. O at 1—2.

It has to be remembered that the Debtor did not disclose any crypto assets in her original Schedules. In her Amended Schedules, she disclosed only the Kingdom Trust cryptocurrency with a value of approximately $29,000.00. (Docket No. 28). She testified at the meeting of creditors that she had heard of Coinbase in a vague way, but that was all. In the end, the Trustee ended up liquidating $200,000.00 worth of cryptocurrency for the benefit of the bankruptcy estate, and the Debtor retained cryptocurrency with a value in excess of $40,000.00. (Docket No. 136).

The Debtor's regret in having signed, and sought Court approval of, the Waiver does not represent a mistake, inadvertence, surprise, or excusable neglect under Rule 60(b)(1). The Court will deny the Motion on this ground.[6]

B. *Rule 60(b)(2).*

Rule 60(b)(2) allows a judgment to be set aside for "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Fed. R. Civ. P. 60(b)(2). The Debtor has not proffered any new evidence. She testified,

---

[6] If the Court were to grant the Debtor the relief she seeks, she would not necessarily receive a discharge. The Court would have to vacate the Orders dismissing Clear Sky and the UST's adversary proceedings and try the cases on the merits.

11

without any expert testimony or corroboration, that Mr. Sheehy "wasn't himself," or words to that effect. She has not demonstrated, however, that Mr. Sheehy was not of sound mind. Moreover, the Debtor was in a position to observe Mr. Sheehy's demeanor before she signed the Waiver and before the Court approved the Wavier, and no evidence has come to light since then concerning Mr. Sheehy's mental health or his ability to advise his clients.

The Court finds that there is no newly discovered evidence that would justify granting relief under Rule 60(b)(2).

C. *Rule 60(b)(3).*

Rule 60(b)(3) allows a judgment to be set aside for "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by the opposing party." Fed. R. Civ. P. 60(b)(3). There has been no evidence that either of the parties opposing the Debtors' Motion, Clear Sky or the UST, are guilty of any fraud, misrepresentation, or misconduct.

Rule 60(b)(3) does not provide an avenue of relief for the Debtor here.

D. *Rule 60(b)(4).*

Rule 60(b)(4) provides that a judgment may be set aside where the judgment is void. Fed. R. Civ. P. 60(b)(4). Generally, this subsection of the Rule applies where the Court lacked personal or subject matter jurisdiction over the defendant or the case. In this case, the Debtor voluntarily filed for bankruptcy protection. She sought court approval of the Waiver, which the Court granted. There can be no question that the Court had jurisdiction over the Debtor and over the Debtor's Motion to Approve the Waiver.

Rule 60(b)(4) does not afford any relief for the Debtor in this case.

E. *Rule 60(b)(5).*

12

Rule 60(b)(5) provides that a judgment may be vacated where it has been satisfied, released or "applying it prospectively is inequitable." Fed. R. Civ. P. 60(b)(5). In this case, the Waiver of the Debtor's discharge was intended to apply prospectively. There have been no intervening circumstances that would make the prospective application of the Waiver, which was negotiated by the Debtor's counsel and which she signed voluntarily, inequitable.

The Court finds that Rule 60(b)(5) does not provide a basis for relief in this case.

F.  *Rule 60(b)(6).*

Finally, Rule 60(b)(6), the catchall provision of the Rule, provides that relief from a judgment may be granted for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). For the reasons stated above, the Court finds that relief from the Order Approving the Waiver is not justified in this case.

The Court, therefore, will deny the Debtor's Motion.

**Conclusion**

It is therefore **ORDERED**:

A. The Debtor's Motion to Vacate the Order approving the waiver of her discharge is denied.

B. The Debtor is advised that she has 14 days within which to note an appeal of this Opinion and Order by filing a Notice of Appeal with the Clerk of the Bankruptcy Court.

C. The Clerk will mail copies of this Opinion and Order, or will provide cm-ecf notice of its entry, to the parties below.

Date: Oct 12 2022

Alexandria, Virginia

/s/ Brian F Kenney

The Honorable Brian F. Kenney
United States Bankruptcy Judge

Entered On Docket: Oct 12 2022

13

<u>Copies to</u>:

Karen J. DeMatteo
3808 Mount Atlas Lane
Haymarket, VA 20169-1818
*Pro Se Debtor*

Donald F. King, Esq.
1775 Wiehle Avenue, Suite 400
Reston, VA 20190
*Chapter 7 Trustee*

Jack Frankel, III, Esq.
1725 Duke Street, Suite 650
Alexandria, VA 22314
*Counsel for the U.S. Trustee*

Edward Grass, Esq.
9501 Burke Road #10784
Burke, VA 22015
*Counsel for Clear Sky Financial, LLC*